## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JONATHAN SAIZ-LOPEZ, a minor, by and
through his mother, MARIA SAIZ.,

        Plaintiff,

                                                  Civ. No. 03-0715 JCH/LFG

vs.

LOS LUNAS HIGH SCHOOL, as one of the
LOS LUNAS PUBLIC SCHOOLS, an educational
body of the STATE OF NEW MEXICO, the LOS
LUNAS SCHOOL BOARD, the governing body of
the Los Lunas Schools, and REX HENINGTON,
individually and in his official capacity as principal,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss, filed

October 15, 2003 **[Doc. No. 13]**.  The Court having considered the motion, briefs, and relevant

law, and being otherwise fully informed, finds that the motion is well taken and will be granted.

## BACKGROUND

On September 2, 2003, Plaintiff Jonathan Saiz-Lopez ("Plaintiff"), a former student at Los

Lunas High School, filed his First Amended Complaint for Violation of Civil Rights and Jury

Demand ("Complaint"), asserting federal Section 1983 claims for violation of Plaintiff's rights to

substantive due process and equal protection of the laws.  On October 15, 2003, Defendants filed

their Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss").  The Court's review of the

Motion to Dismiss is confined to the pleadings.  The Court therefore describes herein only those

facts as alleged by Plaintiff in the Complaint.

During the 2000-2001 school year, Plaintiff was an eighth-grade student at Los Lunas Middle School.  While attending Los Lunas Middle School, Plaintiff constantly was harassed by other students.  Plaintiff's mother, Maria Saiz, informed school officials of the harassment, but the abuse continued.  *See* Compl. ¶¶ 8, 9.

Plaintiff attended Los Lunas High School as a ninth-grade student during the 2001-2002 school year.  *See id.* ¶ 7.  At the beginning of the school year, on August 23, 2001, student James Hobbs stabbed Plaintiff two times with an exacto knife during art class, breaking Plaintiff's skin.  During the same art class, student Ryan Ocero slapped Plaintiff in the face.

Student Sonia Hernandez witnessed these incidents.  *See id.* ¶¶ 10, 11.  Plaintiff and Ms. Hernandez reported the assaults to the art teacher after class.  The art teacher took no action at that time.  Later that day, Plaintiff's mother telephoned the police.  A police officer took Plaintiff's statement that day and took statements from the art teacher, Mr. Hobbs, and Mr. Ocero the following day.  Both students admitted to the police officer that they intentionally had assaulted Plaintiff.  Mr. Hobbs later was suspended for stabbing Plaintiff.  *See id.* ¶¶ 11-14.

On September 21, 2001, Plaintiff was harassed by another student not named in the Complaint.  Plaintiff alleges that the harassment led to an altercation and that the administration responded only after Plaintiff "moved to defend himself."  Plaintiff was suspended for ten days for fighting.  *See id.* ¶¶ 15, 16.  The Complaint does not indicate whether the unnamed student was disciplined.  *See id.*

Approximately one month later, on October 19, 2001, student Elizabeth Chavez was cited

for harassing Plaintiff. *See id.* ¶ 17. Plaintiff does not allege that he was disciplined as a result of this incident. *See id.*

On November 1, 2001, six weeks after Plaintiff's first suspension, student Evan Paquin assaulted Plaintiff on the school playground. When Plaintiff attempted to defend himself, Plaintiff was accused of fighting and was suspended for five days. *See id.* ¶ 18. The Complaint does not state whether Mr. Paquin was punished for this incident. *See id.*

On November 11, 2001, eleven days after Plaintiff's second suspension for fighting with Mr. Paquin, student Jason Sanchez approached Plaintiff in physical education class and held his arms while Mr. Paquin punched Plaintiff. Plaintiff broke free to "shield himself from further blows just as Coach Salazar came upon the scene." Plaintiff and Mr. Paquin both were suspended for fighting as a result of this incident. *See id.* ¶¶ 19, 20.

On November 26, 2001, fifteen days after Plaintiff's third suspension, Plaintiff was assaulted in physical education class by a student not named in the Complaint. That student, Plaintiff alleges, intentionally hit Plaintiff in the head with a basketball two times and then punched Plaintiff in the face. When Plaintiff "moved to defend himself, the altercation was discovered and again Plaintiff was suspended" for three days for fighting. The Complaint does not indicate whether the unnamed student was punished. *See id.* ¶ 21.

On December 12, 2001, counsel for Plaintiff sent a letter to Defendant Henington describing the assaults against Plaintiff and asking Defendant Henington to take affirmative measures to stop the assaults. Plaintiff alleges that Defendant Henington did nothing to address the problems raised by Plaintiff's counsel. *See id.* ¶¶ 24, 25.

On February 1, 2002, approximately two months after Plaintiff's fourth suspension, student Ms. Chavez accused Plaintiff of threatening to kill her.  As a result of Ms. Chavez's accusations, Plaintiff was suspended for two days.  An investigation later revealed that Ms. Chavez had instigated the incident for which Plaintiff was punished.  This is the second time Plaintiff alleges that Ms. Chavez has harassed him.  *See id.* ¶¶ 26, 27.  Plaintiff does not allege that he was suspended for the first, October 19, 2001, incident of harassment involving Ms. Chavez. *See id.*

On February 8, 2002, seven days after Plaintiff's fifth suspension, student Jeremy Padilla approached Plaintiff and began verbally to harass him.  A teacher intervened and stopped the incident before the situation escalated.  Later that day, Mr. Padilla followed Plaintiff to the cafeteria, where Mr. Padilla shoved Plaintiff.  The allegations in the Complaint do not indicate whether either student was punished as a result of this incident.  *See id.* ¶ 28.

On March 20, 2002, approximately six weeks after the first incident involving Mr. Padilla and seven weeks after Plaintiff's fifth suspension, Mr. Padilla harassed Plaintiff a second time, this time physically assaulting Plaintiff.  Plaintiff was sent to the emergency room with a broken nose.  Mr. Padilla's injuries were limited only to his knuckles.  Both Plaintiff and Mr. Padilla were suspended.  Defendants decided to suspend Plaintiff while Plaintiff was in the hospital based only upon Mr. Padilla's version of events.  *See id.* ¶¶ 29, 30.

After each of these assaults, Plaintiff alleges that he, his mother, and the faculty members involved made Defendant Henington aware of the ongoing harassment.  Defendant Henington, in response, chose to punish Plaintiff for "fighting" rather than to intervene and attempt to prevent

4

students from harassing Plaintiff.  Defendant Henington's response in punishing Plaintiff for the incidents, Plaintiff maintains, sent a clear message to the offending students that the administration sanctioned the students' aggressive behavior and that the students' attacks on Plaintiff could continue unabated.  *See id.* ¶¶ 22, 23, 31.

Plaintiff alleges that Defendants did not take affirmative steps to discipline the aggressors, including expelling Mr. Hobbs and Mr. Padilla and segregating the remaining aggressors from Plaintiff.  Instead, Defendants suspended Plaintiff six times, thereby implicitly sanctioning the aggressors' behavior and giving the aggressors the impression that they freely could harass, annoy, and assault Plaintiff.  Plaintiff also alleges that Defendants' behavior in punishing him for defending himself substantially increased his vulnerability to the ongoing and increasingly dangerous situation involving the aggressors.  *See id.* ¶¶ 32, 33.

Plaintiff alleges that as a result of Defendants' conduct in allowing and sanctioning the assaults against Plaintiff, Plaintiff transferred to a home-bound program for the remainder of the 2001-2002 school year and enrolled in a private school for the 2002-2003 and subsequent school years at considerable expense.  *See id.* ¶ 35.

## STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading. Fed. R. Civ. P. 12(b)(6).  A court may dismiss a cause of action under Rule 12(b)(6) for failure to state a claim only if it appears beyond a doubt that a plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief.  *See Hartford Fire Ins. Co. v.*

*California*, 509 U.S. 764, 811 (1993) (citation omitted).  In considering a Rule 12(b)(6) motion, a court must assume all well-pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff.  *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991), *cert. denied*, 504 U.S. 912 (1992).  The issue in reviewing the sufficiency of a complaint is not whether a plaintiff ultimately will prevail, but whether a plaintiff is entitled to offer evidence to support his or her claim.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

These deferential rules, however, do not allow a court to assume that a plaintiff "can prove facts that [the plaintiff] has not alleged or that the defendants have violated the . . . laws in ways that [the plaintiff has not] alleged."  *See Associated Gen. Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The rules also do not require a court to accept legal conclusions or unwarranted inferences.  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citation omitted).

The standard for analyzing a motion to dismiss shifts slightly if a defendant raises qualified immunity as a defense to a suit under 42 U.S.C. Section 1983.  Qualified immunity bars Section 1983 suits against defendants in their individual--but not official--capacities.  *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (citations omitted).  The qualified immunity defense was created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability."  *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).  It provides defendants not only with immunity from liability but also with immunity from suit.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  It grants defendants the "right . . . to avoid standing trial . . .

[and] to avoid the burdens of such pretrial matters as discovery." *Holland v. Harrington*, 268

F.3d 1179, 1185 (10th Cir. 2001) (citation and internal quotations omitted), *cert. denied*, 535

U.S. 1056 (2002).  As a result, the Tenth Circuit "'repeatedly [has] stressed the importance of

resolving immunity questions at the earliest possible stage in litigation.'" *Id.* at 1185 (quoting

*Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curium)); *see also Saucier v. Katz*, 533 U.S.

194, 201 (2001).

    Although "summary judgment provides the typical vehicle for asserting a qualified

immunity defense," the defense can be raised on a motion to dismiss.  *Peterson v. Jensen*, 371

F.3d 1199, 1201 (10th Cir. 2004).  The Tenth Circuit has held, however, that "[a]sserting a

qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more

challenging standard of review than would apply on summary judgment," because a "'motion to

dismiss for failure to state a claim is viewed with disfavor, and is rarely granted.'" *Id.* (quoting

*Lone Star Indus. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992)).

    Once a defendant raises the defense of qualified immunity on a motion to dismiss, a

plaintiff must (1) assert facts which, if true, would constitute a violation of a constitutional right,

and (2) demonstrate that the "right was clearly established so that [a] reasonable official[] in [the]

defendant['s] situation would have understood [his or her] conduct violated that right."[1] *Leibson*

*v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996); *see also, e.g., Saucier*, 533

---

[1] Courts no longer apply a "heightened pleading" standard to a plaintiff's complaint.  *See Currier v. Doran*, 242 F.3d 905, 916 (10th Cir.), *cert. denied*, 534 U.S. 1019 (2001).  Rather, courts must review a complaint under the traditional standards applicable to a motion to dismiss. *See, e.g., Marino v. Mayger*, No. 02-1345, 2004 U.S. App. LEXIS 25079, at *12 n.3 (10th Cir. Dec. 7, 2004) (citations omitted).

U.S. at 201-02.  If a plaintiff fails to satisfy this two-part burden, a court must grant the defendant qualified immunity.  *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  A court's review of a qualified immunity defense raised in a motion to dismiss is limited to the pleadings. *See Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994) (citation omitted), *cert. denied sub nom. Ritz v. Gagan*, 513 U.S. 1183 (1995).

## DISCUSSION

"The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall 'deprive any person of life, liberty, or property, without due process of law,'" *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002) (quoting U.S. Const. Amend. XIV § 1), and that no state shall "deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. Amend. 14.  Section 1983, in turn, "permits an individual to pursue an action against any person who 'under color of any statute, ordinance, regulation, custom, or usage,' deprives the plaintiff of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Id.* (quoting 42 U.S.C. § 1983).  Plaintiff contends that Defendants are liable under Section 1983 because they violated his Fourteenth Amendment rights by creating a danger that increased his vulnerability to third-party student harassment and by treating him in a manner different from other similarly situated students.

Defendants challenge Plaintiff's Section 1983 substantive due process claim on the ground that Plaintiff cannot state a claim under a danger-creation theory, Defendant Henington is protected by qualified immunity, and Plaintiff did not allege the existence of a policy or custom sufficient to hold Defendants Los Lunas Public Schools, Los Lunas School Board, and Henington

in his official capacity liable.  Defendants challenge Plaintiff's Section 1983 equal protection claim

on the ground that Plaintiff alleges only differential treatment based upon a hypothetical factual

situation and not actual differential treatment, Defendant Henington is protected by qualified

immunity, and Plaintiff did not allege the existence of a policy or custom.  The Court will address

each of Defendants' arguments in turn.

I.    Substantive Due Process.

      A.    Alleged Failure to State a Claim Under a Danger-Creation Theory.

"Generally, state actors may only be held liable under § 1983 for their own acts, and not

for the violent acts of third parties."  *Ruiz*, 299 F.3d at 1182 (citing *DeShaney v. Winnebago

County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)).  Courts have recognized two exceptions

to this general rule:  (1) the "special relationship" exception; and (2) the "danger creation"

exception.  *See id.* (citation omitted).  Defendants argue, and Plaintiff concedes, that the special

relationship exception does not apply.  *See* Mem. in Resp. to Defs' Mot. to Dismiss at 4.  The

Court, therefore, grants Defendants' motion to dismiss the substantive due process claim to the

extent it rests on a special relationship theory.

Plaintiff maintains, however, that the danger-creation exception is applicable.  Under a

danger-creation theory, "a state actor may be held liable for the violent acts of a third party if the

state actor 'created the danger' that caused the harm."  *Id.* (quoting *Armijo v. Wagon Mound

Public Schs.*, 159 F.3d 1253, 1262 (10th Cir. 1998)).  "To state a prima facie case under th[is]

exception, a plaintiff must show that (1) the charged state actors created the danger or increased

the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited

and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of

serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendants

acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total,

shocks the conscience." *Id.* at 1182-83 (citing *Armijo*, 159 F.3d at 1262-63). Defendants argue

that Plaintiff has failed to establish the first, third, fourth, and sixth requirements and that the

Court therefore should dismiss Plaintiff's Complaint for failure to state a substantive due process

claim.

        1.    <u>First Requirement:  Creation of Danger</u>.

      "'The key to the state-created danger cases lies in the state actors' culpable knowledge

and conduct in affirmatively placing an individual in a position of danger, effectively stripping a

person of her ability to defend herself, or cutting off potential sources of private aid.'" *Armijo*,

159 F.3d at 1263 (quoting *Johnson v. Dallas Ind. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir. 1994))

(additional citations omitted).  "'Thus the environment created by the state actors must be

dangerous; they must know it is dangerous; and to be liable, they must have used their authority

to create an opportunity that would not otherwise have existed for the third-party's [acts] to

occur.'" *Id.* (quoting *Johnson*, 38 F.3d at 201) (additional citations omitted).  To satisfy these

requirements, a plaintiff must show affirmative conduct on the part of the defendant that "'creates,

or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a

danger than they otherwise would have been.'" *Gonzales v. City of Castle Rock*, 307 F.3d 1258,

1263 (10th Cir. 2002) (citing *Armijo*, 159 F.3d at 1263).  In assessing the affirmative conduct

factor, "it is important to distinguish between affirmative conduct that creates or enhances a

danger and a failure to act that merely does not decrease or eliminate a pre-existing danger.  This distinction, while subtle, is critical." *Id.*

Defendants maintain that Plaintiff's claim must fail because he has not alleged affirmative conduct that created a danger and he only has alleged a failure to act.  *See* Reply to Mot. to Dismiss at 6 ("Defendants simply failed to act to prevent further harassment or abuse.").  The Court does not agree.  Plaintiff has alleged that Defendant Henington engaged in six affirmative acts of suspending Plaintiff which increased the danger to Plaintiff and not that Defendant Henington merely failed to protect Plaintiff.  *See* Compl. ¶¶ 16, 18, 20, 21, 26, 30.  These allegations are sufficient to survive a motion to dismiss.

Defendants also contend that Plaintiff does not state a claim because he merely alleges that Defendant Henington's affirmative actions returned Plaintiff to the same danger he already faced.  *See* Reply to Mot. to Dismiss at 6.  Defendants properly note that "if the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed."  *Armijo*, 159 F.3d at 1263.  Although the allegations in the Complaint indicate that Plaintiff already was in danger prior to the alleged affirmative conduct of Defendant Henington,[2] Plaintiff has alleged that Defendant Henington's affirmative acts of suspending Plaintiff "substantially increased Plaintiff's vulnerability to ongoing and escalating danger by other

_____

[2] For example, Plaintiff was attacked on August 23, 2001, with an exacto knife and throughout middle school even though Defendant Henington had not yet engaged in the affirmative conduct of suspending Plaintiff prior to these incidents.  *See* Compl. ¶¶ 9, 10.  Plaintiff likewise was harassed by an unnamed student on September 21, 2001, prior to any affirmative act by Defendant Henington.  *See id.* ¶ 15.

students," and that Defendant Henington's conduct caused the aggressors to "escalate their assaultive conduct." Compl. ¶¶ 34, 40; *see also id.* ¶¶ 23, 32. It is possible that these allegations may be sufficient to indicate that the affirmative acts of suspension increased the danger that Plaintiff faced or made Plaintiff more vulnerable to the danger he originally faced. *See id.* ¶¶ 34, 40. Accordingly, at this stage in the litigation the Court cannot say beyond a doubt that Plaintiff can prove no set of facts in support of his claim that the challenged conduct increased the danger faced by Plaintiff or Plaintiff's vulnerability to the danger.

2.   Third Requirement: Serious, Immediate and Proximate Harm.

To state a prima facie case under the "danger creation" exception, a plaintiff must show that the defendant's conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm. *See Ruiz*, 299 F.3d at 1182-83 (citing *Armijo*, 159 F.3d at 1262-63). "[A]n immediate threat of harm[] . . . by its nature has a limited range and duration." *Id.* at 1183 (citing *Graham*, 22 F.3d at 995). Any danger that is too remote a consequence of a defendant's action is not sufficient to hold a defendant liable under the federal civil rights law. *See Graham*, 22 F.3d at 995 (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)).

Defendants argue that the Complaint does not contain allegations sufficient to indicate that Defendants' affirmative conduct placed Plaintiff at risk of immediate danger. Rather, according to Defendants, the facts alleged only indicate that Defendants' conduct presented a threat of indefinite range and duration. *See* Mem. in Supp. of Mot. to Dismiss at 8. Defendants argue that not one of the alleged incidents falls within ten days of an affirmative act by Defendant

12

Henington.[3]  *See* Reply to Mot. to Dismiss at 6.

The immediacy requirement, however, is not necessarily linked to the number of days between a defendant's last affirmative act and any resulting harm.  In *Currier v. Doran*, for example, the Tenth Circuit held that the affirmative conduct of various social workers with respect to two children stated a claim under a danger-creation theory where the children's father abused and ultimately killed one of the children.  *See* 242 F.3d 905, 909-10 (10th Cir. 2001).  In that case, instances of alleged affirmative conduct occurred outside of eleven days from the date of any alleged subsequent abuse.  *See id.*  The Tenth Circuit nonetheless held that the affirmative conduct at issue placed the children at risk of serious, immediate, and proximate harm.  *See id.* at 920, 922.

The proper inquiry is whether the alleged affirmative conduct placed Plaintiff at risk of serious, immediate and proximate harm and not whether the harm was in fact immediate.  *See Ruiz*, 299 F.3d at 1182-83.  Plaintiff has alleged that Defendant Henington's conduct of suspending him "substantially increased Plaintiff's vulnerability to ongoing and escalating danger by other students," and caused the aggressors to "escalate their assaultive conduct."  Compl. ¶¶ 34, 40.  According to Plaintiff, Defendant Henington's conduct sent the clear message to students that their own aggressive behavior was "sanctioned" by the administration and could continue "unabated."  *See id.* ¶¶ 23, 32.  Assuming Plaintiff's allegations are true for purposes of this Motion to Dismiss, the Court cannot say beyond a doubt that Plaintiff can prove no set of facts

---

[3] In fact, the February 8, 2002, harassment Plaintiff allegedly suffered at the hands of Mr. Padilla occurred within seven days of his fifth suspension, on February 1, 2002.  *See* Compl. ¶¶ 26, 28.

that would indicate that Plaintiff's suspensions placed him at risk of immediate danger.

       3.     Fourth Requirement:  Obvious or Known Risk.

Defendants also challenge the Complaint on the ground that Plaintiff has not alleged that the risk at which Defendant Henington placed Plaintiff was obvious or known.  *See Ruiz*, 299 F.3d at 1182.  Plaintiff has alleged, however, that the "risk to Plaintiff's safety and well being was obvious and known to Defendants as a result of Plaintiff, his mother and other school making Defendants aware of the ongoing risks."  Compl. ¶ 40.  Plaintiff further alleges that he and/or his mother made Defendants aware of the harassment after each incident, and that Plaintiff's attorney sent a letter to Defendant Henington notifying Defendant of the assaults and asking Defendant to take affirmative measures to stop the abuse.  *See* Compl. ¶¶ 22, 24, 31.  Based on these allegations, the Court cannot say beyond a doubt that Plaintiff can prove no set of facts indicating that the risks to Plaintiff resulting from Defendant's affirmative conduct were known or obvious.

       4.     Sixth Requirement:  Shocks the Conscience.

To state a substantive due process claim, Plaintiff must allege conduct sufficient to "shock the conscience" of federal judges.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992); *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995), *cert. denied*, 516 U.S. 1118 (1996).  In determining whether conduct "shocks the conscience" so as to rise to the level of a substantive due process violation, the Tenth Circuit has instructed courts to bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims:  (1) the need for restraint in defining the scope of substantive due process claims, (2) the concern that Section 1983 not replace state tort law, and (3) the need for deference to school officials and bodies in

making decisions impacting student discipline and safety.  *See id.* (citations omitted).  These factors weigh in favor of reserving application of the danger creation theory as the basis for a constitutional claim for exceptional circumstances.  *See Ruiz*, 299 F.3d at 1184 (citing *Eckert v. Town of Silverthorne*, No. 00-1030, 2001 WL 1152781 (10th Cir. July 9, 2001)).

Consistent with these principles and Tenth Circuit precedent, a plaintiff typically must allege conduct involving deliberately wrongful government decisions rather than merely negligent government conduct.  *See Uhlrig*, 64 F.3d at 573 (citing *Collins*, 503 U.S. at 127 n.10).  To satisfy this requirement, a plaintiff first must allege facts indicating an intent to harm or an intent to place a person unreasonably at risk of harm.  *See id.*  "Where the state actor has the luxury to truly deliberate about the decisions he or she is making, something less than unjustifiable intent to harm, such as calculated indifference, may suffice to shock the conscience."  *Castaldo v. Jefferson County Sheriff*, No. 00-B-1611, 2001 U.S. Dist. LEXIS 24531, *81-82 (D. Colo. Nov. 27, 2001) (citation omitted).  The Tenth Circuit has held, however, that "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. . . .  [T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking," *Uhlrig*, 64 F.3d at 574, *i.e.*, the conduct must be "so egregious, outrageous and fraught with unreasonable risk so as to shock the conscience," *id.* at 576.  In addition, the Supreme Court specifically has admonished that a substantive due process violation requires more than an ordinary tort and that merely allowing unreasonable risks to persist is not necessarily conscience shocking.  *See id.* at 574 (citing *Collins*, 503 U.S. at 128).

15

Defendants argue that Plaintiff has not alleged conduct that shocks the conscience because Plaintiff has alleged only that Defendants were negligent and negligent conduct is not sufficient to shock the conscience.  *See* Mem. in Supp. of Mot. to Dismiss at 9; Reply to Mot. to Dismiss at 7-8.  A review of the Complaint indicates, however, that Plaintiff does not only allege negligent conduct.  Rather, Plaintiff alleges that Defendant Henington acted recklessly and with knowledge, bad faith, and deliberation in disciplining and suspending Plaintiff and that by his affirmative conduct, Defendant Henington sanctioned the aggressors' conduct thereby increasing the danger Plaintiff faced.  *See* Compl. ¶¶ 37, 41.  Accordingly, the claim is not subject to dismissal on this ground.

Defendants also argue that the conduct does not shock the conscience.  The Tenth Circuit has explained that the level of culpability that must be shown under the "shocks the conscience" standard is difficult to define and continuously will evolve as courts render judgments as to the constitutionality of specific government conduct.  *See Uhlrig*, 64 F.3d at 574.  Because the standard is difficult to define, the Court must compare the facts of this case with the facts of other analogous cases to determine whether Plaintiff has alleged conduct that shocks the conscience. *See Castaldo*, 2001 U.S. Dist. LEXIS 24531, at *79-86.

A key factor to determining whether conduct shocks the conscience is a defendant's knowledge of a specific risk to a particular plaintiff.  For example, in two separate cases involving attacks by male inmates on female prison staff, the Tenth Circuit reached opposite results based upon the presence of knowledge.  In the first case, *L.W. v. Grubbs*, the court held that the conduct of the defendant supervisors shocked the conscience where the defendants required a

16

plaintiff nurse to work alone in the medical clinic of a detention center with a known violent sex

offender and the offender assaulted, battered, kidnaped, terrorized and raped the plaintiff.  *See*

974 F.2d 119, 120 (9th Cir. 1992), *cert. denied*, 508 U.S. 951 (1993).  In support of its holding,

the court noted that the defendant supervisors had promised the plaintiff nurse before hiring her

that she would not be required to work alone with sex offenders and the defendant supervisors

knew that the inmate (i) had an extraordinary history of unrepentant violence against women and

girls, (ii) was likely to assault a female if left alone with her, (iii) would be alone with plaintiff, and

(iv) would be able to overpower plaintiff.[4]  *See id.* at 121-22.  In contrast, in *Leibson v. New*

*Mexico Corrections Dep't*, the Tenth Circuit held that a plaintiff librarian working in a maximum

security unit of New Mexico State Penitentiary did not allege conscience-shocking behavior

where the state defendants removed a corrections officer from the library and the plaintiff librarian

---

[4] Other courts have found conduct conscience shocking when defendants have acted with
knowledge of a specific risk to a particular plaintiff.  *See, e.g.*, *Currier*, 242 F.3d at 909-910
(conduct of state defendants shocked the conscience where state granted custody of two children
to their father even though a state social worker was aware of the father's history of financial
irresponsibility, noticed bruises on the children on at least two occasions while the children were
in the physical custody of the father, and was informed on at least three occasions that the
children's father allegedly was abusing the children); *Armijo v. Wagon Mound Public Schs.*, 159
F.3d 1253, 1256-57, 1264 (10th Cir. 1998) (school administrators's behavior shocked the
conscience where administrators suspended sixteen-year old special education student who was
known to be suffering from depression and suicidal thoughts as recent as the day of the
suspension, did not inform student's parents of the suspension, drove student home without
determining whether student's parents were home even though school officials knew student had
access to firearms, and student fatally shot himself while unsupervised at home); *Sutton v. Utah
State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1241 (10th Cir. 1999) (student suffering from
severe cerebral palsy, mental retardation, and total blindness and inability to speak stated a claim
that shocked the conscience where student's mother informed defendant school officials that her
son had been sexually molested in a bathroom by another student offender, officials promised (but
failed) to supervise student while in the bathroom, and officials caught same offender sexually
molesting student a second time in the bathroom).

was kidnaped, held hostage, and sexually assaulted by an inmate library assistant.[5]  *See* 73 F.3d

274, 275, 277 (10th Cir. 1996) (distinguishing the case from *Grubbs* in which Defendants

independently had created an opportunity for and facilitated the inmate's assault on the plaintiff).

In *Leibson*, the defendants did not possess knowledge of a particular risk to the plaintiff librarian

by the particular inmate in question.  *See id.*

Based on these cases, the Court concludes that Defendants' conduct could be conscience

shocking depending on additional factual development.  *Cf. Currier*, 242 F.3d at 920.  Plaintiffs

have alleged that Defendant Henington had knowledge of the risks to Plaintiff, and that Defendant

nonetheless acted with bad faith, malice, and deliberation when he decided to suspend Plaintiff.

*See* Compl. ¶¶ 22, 24, 31, 37.  Although admittedly the affirmative conduct of suspending Plaintiff

on numerous occasions after seeing Plaintiff "move to defend himself," *see* Compl. ¶¶ 15, 18, 21,

does not at first glance shock the conscience, based on Plaintiff's allegations of knowledge, the

Court cannot say beyond a doubt that Plaintiff could prove no set of facts that shock the

conscience of the federal judiciary.  The Court notes, however, that the "egregious, outrageous

and fraught with unreasonable risk so as to shock the conscience" standard, *see Uhlrig*, 64 F.3d at

574, 576, is difficult to meet.  While these facts as alleged may not be sufficient to survive a

motion for summary judgment, they are sufficient to survive a motion to dismiss.

---

[5] *See also Ruiz*, 299 F.3d at 1183-84 (state defendants could not be held liable for the
death of plaintiff's son at a privately-run, state-licensed day care center, because the conduct of
defendants in failing to conduct the requisite background and insurance checks on day care center
did not shock the conscience).

B.       Defense of Qualified Immunity.

Defendant Henington in his individual capacity raises qualified immunity as a defense to Plaintiff's Section 1983 claim for violation of his rights to substantive due process.  To determine whether Plaintiff has satisfied the first part of his qualified immunity burden by establishing a constitutional violation, the Court must look to the substantive law in effect at the time the conduct in question occurred.  *See Saucier v. Katz*, 533 U.S. 194, 199 (2001).

If the Court finds that Plaintiff has stated a constitutional violation on the facts alleged, the Court must consider next whether the right violated was clearly established.  *See id.* at 201-02. "[T]he right [Defendants are] alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.'"  *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)).  Therefore, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his [or her] conduct was unlawful in the situation . . . confronted." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).  Under this test, even if a defendant were mistaken in believing . . . [that his actions violated a plaintiff's constitutional rights], the defendant may be entitled to immunity if the mistaken belief was reasonable.  *See Holland v. Harrington*, 268 F.3d 1179, 1196 (10th Cir. 2001), *cert. denied*, 535 U.S. 1056 (2002).  The Tenth Circuit has held that for a right to be "particularized," there "ordinarily . . . must be a Supreme Court or Tenth Circuit opinion on point."  *Garramone v. Romo*, 94 F.3d 1446, 1451 (10th Cir. 1996). That is not to say, however, that "the very action in question [must have] previously been held

unlawful" for a plaintiff to defeat qualified immunity, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), but rather that in light of preexisting law, the unlawfulness was apparent.

The Tenth Circuit recently explained in *Pierce v. Gilchrist* the degree of specificity required of prior cases clearly to establish a constitutional violation for qualified immunity purposes. *See* 359 F.3d 1279 (10th Cir. 2004). In *Pierce*, the court noted that the Supreme Court's decision in *Hope v. Pelzer*, 536 U.S. 730 (2002), "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Id.* at 1298. *Pierce* further explained that under the fair notice standard, "[t]he degree of specificity required from prior case law depends in part on the character of the challenged conduct. The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* (citations omitted); *accord Marino v. Mayger*, No. 02-1345, 2004 U.S. App. LEXIS 25079, at *14 (10th Cir. Dec. 7, 2004).

In this case, the Court has held that Plaintiff's claims are sufficient to state a substantive due process violation for purposes of a motion to dismiss. For purposes of a qualified immunity analysis, the Court assumes that Plaintiff's allegations state a claim for a violation of substantive due process. The Court holds, however, that a reasonable official in Defendant Henington's position would not have understood that his conduct as alleged violated Plaintiff's right to substantive due process.

In this case, it is not obvious in light of prevailing constitutional principles that the

challenged conduct violates Plaintiff's constitutional rights.  Accordingly, pursuant to *Pierce*, case law specifically must indicate that the conduct in question violates the law for Plaintiff to satisfy the clearly established prong of the qualified immunity test.  *See* 359 F.3d at 1298.  Plaintiff's particular theory of danger creation, *i.e.*, that Defendant Henington increased Plaintiff's vulnerability to student harassment by punishing both Plaintiff and the aggressors (and on certain occasions just Plaintiff) and sending a message that the aggressors could continue their harassment unabated, is not well established in the law.   Indeed, Plaintiff has not cited, and this Court cannot find, any factually analogous Supreme Court or Tenth Circuit case.  Accordingly, the Court holds that the law is not clearly established such that a reasonable official in Defendant Henington's position would have known that his conduct violated the law.  *See Currier*, 242 F.3d at 925 (holding that the plaintiff's danger creation theory was not well established in the case law and that therefore a reasonable official in the defendant's position would not have known that her conduct violated the law).  The Court therefore dismisses the substantive due process claim against Defendant Henington in his individual capacity on the ground of qualified immunity.

  C.  <u>Failure to Allege Policy or Custom, Deliberate Indifference, or Causation</u>.

  Local school boards and school districts, such as Defendants Los Lunas Public Schools and Los Lunas School Board, are not immune from Section 1983 suits.  *See Daddow v. Carlsbad Mun. Sch. Dist.*, 120 N.M. 97, 89 P.2d 1235 (N.M. 1995).  Although courts can impose civil liability on school districts and boards for their own illegal acts, the Supreme Court repeatedly has refused to hold governmental entities liable for the tortious acts of their employees under a theory of *respondeat superior.  See, e.g., Monell v. New York City Department of Social Services*, 436

21

U.S. 658, 689 (1978); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citation omitted).

The Supreme Court has concluded that government entities can be held liable only when an injury is inflicted by the government's "'lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 117 (1988) (quoting *Monell*, 436 U.S. at 694). The Court explained that requiring a plaintiff to "[l]ocat[e] a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997) (citation omitted). If an alleged violation "cannot be characterized as official policy then [a city] can still be held liable if the practice is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970)); *see also Brown*, 520 U.S. at 403-04. "In order to establish a custom, the actions must be 'persistent and widespread . . . practices of city officials.'" *Lankford*, 73 F.3d at 286 (quoting *Starrett v. Wadley*, 876 F.2d 808, 818 (10th Cir. 1989)).

It is not enough for a plaintiff merely to identify conduct properly attributable to a governmental entity by pointing to a policy or custom adopted or approved by an appropriate party. A plaintiff also must show that the entity's action or inaction resulted from "deliberate indifference to the rights of the plaintiff." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996); *see also Brown*, 520 U.S. at 407. To satisfy this culpability requirement, a plaintiff must show

that the entity's action or failure to act "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

In addition to "deliberate indifference," a plaintiff also must demonstrate that governmental entity "was the 'moving force' behind the injury alleged. That is, a plaintiff must . . . demonstrate a direct causal link between the . . . action and the deprivation of federal rights." *Brown*, 520 U.S. at 404; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). To be the "moving force," there "must at least be an affirmative link between the . . . inadequacies alleged, and the particular constitutional violation at issue." *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985).

The Complaint is devoid of any allegations of policy or custom. Plaintiff argues, however, that even though he does not allege Defendants "'acted pursuant to custom or policy'" he does allege "*facts* that will constitute evidence of such custom or practice when proved." Pl's Resp. to Defs' Mot. to Dismiss at 11. In support of this argument, Plaintiff cites *Watson v. City of Kansas City*, 857 F.2d 690, 696 (10th Cir. 1988). In *Watson*, the Tenth Circuit stated, but did not decide, that the "plaintiff's version of events regarding her own situation, if believed, may demonstrate a pattern of deliberate indifference on the part of the Police Department." *Id.* Likewise, Plaintiff implies here that his allegations describing the repeated occasions on which Defendant Henington engaged in the challenged conduct toward Plaintiff (and not toward other students) are sufficient to allege a policy or custom. Although at least one court has so held, *see Thurman v. Torrington*, 595 F. Supp. 1521, 1530 (D. Conn. 1984), Plaintiff has pointed to no case that holds that a plaintiff can state a claim in this manner without identifying the existence or nature of the custom

23

or policy.  The Court therefore dismisses Plaintiff's substantive due process claims against

Defendants Los Lunas Public Schools, Los Lunas School Board, and Henington in his official

capacity.[6]

II.   Equal Protection Clause.

     "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne*

*Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "An

equal protection violation occurs when the government treats someone differently than another

who is similarly situated" and there is no rational basis for the difference.  *Penrod v. Zavaras*, 94

F.3d 1399, 1406 (10th Cir. 1996) (citation omitted).[7]

     Defendants argue, and the Court agrees, that Plaintiff has not stated a valid equal

protection claim.  "[A]t the heart of any equal protection claim must be an allegation of being

treated differently [from] those similarly situated."  *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d

504, 533 (10th Cir. 1998).  Plaintiff alleges that if he had been a female student, he would have

been treated differently.  *See* Compl. ¶ 49.  Plaintiff does not allege actual differential treatment

---

     [6] In addition to the failure to allege any particular custom or policy, Plaintiff has failed to allege that Defendants Los Lunas Public Schools, Los Lunas School Board, and Henington in his official capacity acted with deliberate indifference or that the policy or custom was the moving force behind the injury.  These additional pleading failures also require dismissal of the substantive due process claim.

     [7] If a plaintiff alleges violation of a fundamental right or discrimination against a suspect class, heightened scrutiny applies.  *See id.*

and does not allege any facts from which the Court can infer actual differential treatment.  Plaintiff

has not stated a Section 1983 equal protection claim, and the Court therefore dismisses Plaintiff's

equal protection claim on this ground.[8]

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that Defendant's Motion

to Dismiss, filed October 15, 2003 **[Doc. No. 13]**, is hereby **GRANTED** as follows:

1.      Plaintiff's 42 U.S.C. Section 1983 substantive due process claims against

Defendants Henington (in his individual and official capacities), Los Lunas Public Schools, and

Los Lunas School Board are dismissed to the extent they rest on a special relationship theory;

2.      Plaintiff's 42 U.S.C. Section 1983 substantive due process claim against Defendant

Henington in his individual capacity is dismissed without prejudice in its entirety to the extent it

rests on a danger creation theory on the ground of qualified immunity;

3.      Plaintiff's 42 U.S.C. Section 1983 substantive due process claims against

Defendants Henington in his official capacity, Los Lunas Public Schools, and Los Lunas School

Board are dismissed without prejudice to the extent they rest on a danger creation theory because

Plaintiff has not alleged that Defendants acted pursuant to a policy or custom, that they acted with

---

[8] The Court also dismisses the equal protection claims against Defendants Los Lunas Public Schools, the Los Lunas School Board, and Henington in his official capacity for another reason.  As Defendants note, Plaintiff has not alleged that Defendants Los Lunas Public Schools, Los Lunas School Board, or Henington in his official capacity acted pursuant to a policy or custom.  In addition, Plaintiff has not alleged that these Defendants acted with deliberate indifference, or that the policy or custom was the moving force behind Plaintiff's injury.  Although Defendant Henington in his individual capacity also argues that the equal protection claim against him should be dismissed on the ground of qualified immunity, the Court need not, and therefore does not, decide whether qualified immunity protects Defendant Henington from this claim.

deliberate indifference, or that the policy or custom was the moving force behind the injury alleged;

4.      Plaintiff's 42 U.S.C. Section 1983 equal protection claims against Defendants Henington (in his individual and official capacities), Los Lunas Public Schools, and Los Lunas School Board are dismissed without prejudice for failure to state a claim because Plaintiff has not alleged actual differential treatment; and

5.      Plaintiff's 42 U.S.C. Section 1983 equal protection claims are dismissed without prejudice against Defendant Henington in his official capacity, Los Lunas Public Schools, and Los Lunas School Board because Plaintiff has not alleged that Defendants acted pursuant to a policy or custom, that they acted with deliberate indifference, or that the policy or custom was the moving force behind the injury alleged.

**IT FURTHER IS ORDERED** that Plaintiff is granted leave to amend the Complaint within thirty (30) days from the date of this Memorandum Opinion and Order, provided that Plaintiff can assert in good faith and consistent with Federal Rule of Civil Procedure 11, allegations that (i) with respect to both the substantive due process and equal protection claims Defendants Henington in his official capacity, Los Lunas Public Schools, and Los Lunas School Board engaged in a specifically identified policy or custom, that they acted with deliberate indifference, and that the policy or custom was the moving force behind the injury, and (ii) with respect to the equal protection claim, Plaintiff can allege in a non-conclusory fashion specific facts demonstrating actual differential treatment.

**IT ALSO IS ORDERED** that if Plaintiff files a second amended complaint consistent

26

with this Memorandum Opinion and Order, the second amended complaint shall relate back to

Plaintiff's First Amended Complaint for Violation of Civil Rights and Jury Demand.


Dated this 30th day of December 2004.


                                        _____
                                        JUDITH C. HERRERA
                                        UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:

        Hannah B. Best, Esq.

Attorneys for Defendants:

        Daniel J. Macke, Esq.
        Elizabeth L. German, Esq.